|   |   |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **DISTRICT OF NEVADA** |

|   |   |
|---|---|
| FREDERIC GREEN, | Case No.: 2:17-cv-00090-APG-PAL |
| Plaintiff | **Order Denying Plaintiff's Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment** |
| v. | |
| HIGH DESERT STATE PRISON MEDICAL DEPARTMENT, et al., | [ECF Nos. 47, 52] |
| Defendant | |

Plaintiff Frederic Green sues Albert Buencamino, Romeo Aranas, George Leeks, and Gregory Bryan for violating his Eighth Amendment rights by acting deliberately indifferent to his medical needs. Green moves for summary judgment on his four remaining claims, arguing that he has presented sufficient evidence to prove his allegations. ECF No. 47. The defendants also move for summary judgment on the same four claims, arguing that the admissible evidence shows that Green did not have a serious medical need and that the defendants' responses to his medical needs were not deliberately indifferent. ECF No. 52. The defendants also argue that they are entitled to qualified immunity. *Id.*

There are material questions of fact regarding the delays in providing Green with specialized care and his prescribed medication and whether those delays resulted in additional pain and damage to Green's eyes. Viewing the evidence in the light most favorable to Green, a reasonable jury could find that the defendants were deliberately indifferent to his medical needs. Alternatively, viewing the evidence in the light most favorable to the defendants, a reasonable jury could find that the defendants were not deliberately indifferent to Green's medical needs. Additionally, when viewing the evidence in the light most favorable to Green, the defendants'

actions would be in clear violation of the Constitution and therefore not covered by qualified immunity. I therefore deny Green's motion for summary judgment and the defendants' motion for summary judgment on Counts III, IV, V, and VI.

## I. PROCEDURAL HISTORY AND BACKGROUND

In his amended complaint, Green sued multiple defendants for events that took place while he was incarcerated at High Desert State Prison ("HDSP"), alleging nine counts of deliberate indifference to medical needs. ECF No. 4 at 1-4. His claims arise from all the medical treatment he received for an ongoing eye irritation while in custody at HDSP. *Id.* In the screening order, I dismissed Counts I and IX. ECF No. 6. I subsequently dismissed Counts II, VII, and VIII upon Green's stipulation. ECF Nos. 61; 62. The four remaining counts are:

- Count III against Albert Buencamino, the Director of Nursing Services Level II for the Nevada Department of Corrections (NDOC), for disregarding Green's arguments during the grievance process on why his staff failed to refill Green's prescription after 60 days and 120 days (ECF No. 4 at 16);
- Count IV against Romeo Aranas, the Medical Director of the NDOC, for permitting his staff to disregard Green's medical needs and being unaware of the delay in Green's prescriptions (*Id.* at 17);
- Count V against George Leeks, an outside optometrist contracted by the NDOC, for deliberately disregarding Green's concerns about redness and irritation in his eye, failing to request a follow-up appointment with a specialist, and referring Green to an outside specialist for a second opinion regarding a scar in Green's retina even though Green informed Leeks that the scar was from a 20-year-old injury (*Id.* at 19);
- Count VI against Gregory Bryan, the Senior Physician at HDSP, for disregarding the seriousness of Green's medical needs and suggesting that Green use artificial tears for his eyes (*Id.* at 21).

Both parties have now moved for summary judgment on Counts III-VI.[1] ECF Nos. 47; 52.

////

////

---

[1] In his motion for summary judgment, Green renumbers his charges. *See* ECF No. 47 at 11-12. For consistency, I will continue to use the numbering from the amended complaint.

2

## II. ANALYSIS

### A. Legal Standards

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

In ruling on a qualified immunity defense, I consider whether the evidence, viewed in the light most favorable to the plaintiff, shows the defendants' conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). If so, I then determine whether the right was clearly established. *Id.* I may perform this two-step inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted). The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). I must avoid addressing qualified immunity at a high level of generality. *Saucier*, 533 U.S. at 201; *see also Kisella v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018); *Sheehan v. Cty. of San Francisco*, 135 S. Ct. 1765, 1775–76 (2015). Rather, I must consider the specific facts of the case and determine whether an official would know his or her actions violated clearly established law in those particular circumstances. *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504-505 (2019).

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to an inmate's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

2006) (internal quotations omitted). The Ninth Circuit has identified three situations in which a medical need qualifies as serious: (1) "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment," (2) "the presence of a medical condition that significantly affects an individual's daily activities," or (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (*overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). "A prison official is deliberately indifferent under the subjective element of the test only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014), (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Further, if the claim of medical indifference stems from an alleged delay in receiving medical treatment, the prisoner must show that the delay itself led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

/ / / /

**B.     The Parties' Arguments**

In moving for summary judgment, Green submits his own declaration of facts; a handwritten summary of what appear to be the examinations he received from Leeks and two outside specialists at the Nevada Retina Center, Dr. Tyson Ward and Dr. Loren E. Little; copies of the medical examination request forms he submitted while at HDSP; and a copy of his denied motion to supplement his amended complaint, which includes a statement regarding his appointment with Little at the Nevada Retina Center. ECF No. 47 at 5-7, 15-18, 19-28, and 29-35.  Green argues that this evidence is sufficient to prove his allegations, such that a reasonable jury could not find in favor of the defendants.

The defendants argue that the Green offers no medical records or admissible evidence to support any of the claims in his amended complaint. ECF No. 52 at 6.  They contend that I should not consider Green's handwritten summary of examinations because it violates the best evidence rule.  They also argue that even if I consider the summary, the medical records show that he was diagnosed with blepharoconjunctivitis, choiroid scar, and presbyopia. ECF No. 52-7 at 5-7.  They posit that none of these conditions is a serious medical need, as they will not result in further injury or unnecessary and wanton infliction of pain. ECF No. 52 at 7.

The defendants also argue that the evidence shows none of the defendants was deliberately indifferent to Green's medical needs. *Id.*  They submit a history of Green's grievance reports (ECF Nos. 52-5), which they assert shows Green was continuously treated by medical providers within HDSP, given diagnoses, prescribed medications, and taken to an outside provider. *Id.*  They further contend that Green has submitted no evidence that any of the defendants purposefully acted indifferently or failed to respond to his medical needs.

1    Green replies that he has limited access to his medical records and was allowed to copy

2 them by only by taking handwritten notes. ECF No. 51 at 4-5.  He asks that I consider the

3 evidence presented in the defendants' opposition, arguing that the records from the visits with

4 Ward and Little prover he has permanent eye damage that could have been prevented had he

5 visited an outside specialist earlier, per his requests. *Id.*  He also argues that even if he has now

6 received the proper care, he endured prolonged suffering, pain, and irritation in the unnecessarily

7 long time it took for him to receive treatment. *Id.* at 8.  He also cites heavily to the defendants'

8 interrogatory answers, arguing that they amount to admissions of his claims. *Id*. at 8-12.

9    Finally, the defendants argue they are entitled to qualified immunity and Green cannot

10 show any particularized facts proving they violated any clearly established law. ECF No. 52 at 8-

11 9.  Green counters that the defendants became aware of the clearly established law when they

12 responded to the interrogatories. ECF No. 54 at 17.

**C.    Analysis**

A reasonable jury could conclude that at least some of Green's eye conditions qualify as serious medical conditions.  The medical reports from his visit at Nvision Eye Centers include diagnoses of angular blepharoconjunctivitis, choiroid scar, and presbyopia. ECF No. 52-7. Multiple medical professionals found them "important and worthy of comment or treatment," and a reasonable jury could find that the medical reports and Green's grievance history are sufficient to conclude that his conditions "significantly affect[ed] [his] daily activities," and may have caused him "chronic and substantial pain." *Egberto*, 678 F. App'x 503.

However, there are questions of material fact regarding the defendants' treatment of those conditions.  The medical records and grievance reports show that Green was examined by HDSP physicians and nurses at least six times from July 2015 to the filing of his complaint. ECF Nos.

7

52-5; 52-6. He also saw an outside specialist during that time and, since his complaint was filed, he has been evaluated by outside specialists two more times. *Id.* A reasonable jury could find that Green's medical requests were not completely ignored by the HDSP staff. However, these appointments also suggest that the defendants knew or should have known of Green's medical condition, which was serious and required treatment according to Green's rendition of his visit with outside specialists. ECF No. 47:3. Additionally, a reasonable jury could conclude that Green was without his prescribed eyedrops for an uncomfortably long period of time despite his repeated requests for that medication. *Id*. Green alleges that these delays were the result of the defendants' indifference, whereas the defendants allege that they were due to either genuine mistakes or the priority medical system applied by the HDSP. Viewing these facts in the light most favorable to Green, a reasonably jury could conclude that the delays were due to the defendants' knowing indifference and therefore constitute deliberate indifference. Alternatively, viewing these facts in the light most favorable to the defendants, a reasonable jury could conclude the opposite.

Similarly, there are questions of material fact regarding whether the defendants' actions led to further injury. The reports from Green's most recent visits with outside specialists include diagnoses of angular blepharoconjunctivitis, choiroid scar, and presbyopia. ECF No. 52-7. There is no indication in these reports that Green's conditions were due to delays or misdiagnoses. Presbyopia is the normal loss of near focusing ability that occurs with age, and by Green's own admission the choiroid scar is likely the result of an accident that occurred well before the incidents alleged in his amended complaint. As the defendants concede, angular blepharoconjunctivitis is an uncomfortable eye ailment, but nothing in the medical report suggests that it presents the possible loss of sight that Green alleges in his amended complaint.

8

However, according to Green's record of the examinations, the ophthalmologist told him that "had [he] received the proper medical care the damage to [his] eyes would have been prevented," and that "because of the length and time that has pass [sic] regarding [his] serious medical needs . . . [he] will suffer from permanant [sic] damage . . . ." ECF No. 47:3 at 4. The fact that these statements were not included in the official medical report does not mean that the ophthalmologist did not say them.

The defendants argue that I should not consider Green's handwritten summary of these examinations because it violates the best evidence rule. They are correct that this evidence is not "[a]n original writing, recording, or photograph" (Fed. R. Evidence 1002) and is hearsay (Fed. R. Evid. 801). However, evidence that is not admissible can be considered at the summary judgment stage if it "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003); *see also Hughes v. United States,* 953 F.2d 531, 543 (9th Cir. 1992) (holding that an affidavit may be considered on summary judgment despite hearsay and best evidence rule objections). At trial, Green could present the physicians who conducted the exams to corroborate what Green presents in his handwritten summary. Therefore, I consider all of Green's evidence at this stage.

As to whether the defendants are entitled to qualified immunity, viewing the evidence in Green's favor, a reasonable jury could determine that the defendants intentionally denied specialized treatment and medication to Green for non-medical and non-administrative reasons. These actions would constitute a violation of clearly established law. *See Wakefield v. Thompson*, 177 F.3d 1160, 1164–65 (9th Cir. 1999) (holding that failing to provide prescribed medication for non-medical reasons constitutes deliberate indifference); see also *Dep't of Corr.*, 678 F. App'x 500, 504 (9th Cir. 2017) ("Prison officials violate the Eighth Amendment when

they ignore the instructions of the prisoner's treating physician or surgeon when providing prescribed medication." (quoting *Wakefield*, 177 F.3d at 1165).

**IV. CONCLUSION**

    IT IS THEREFORE ORDERED that plaintiff Frederic Green's motion for summary judgment and the defendants' motion for summary judgment **(ECF Nos. 47 and 52) are DENIED**.

    DATED this 16th day of May, 2019.

                                     ANDREW P. GORDON
                                     UNITED STATES DISTRICT JUDGE